**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORANGE DIVISION**

ABIGAIL AND DANIEL LACISTE,
Individually, and as legal guardians of
K.L., a minor child,

        Plaintiffs,                          **CASE No.**

        v.

ABBOTT LABORATORIES, INC.

        Defendant.

_____/

## COMPLAINT

Plaintiffs, Abigail and Daniel Laciste, individually, and as legal guardians of K.L., a minor child, by and through undersigned counsel, file this Complaint, and alleges against Defendant, ABBOTT LABORATORIES INC, as follows:

## INTRODUCTION

1.      Plaintiffs, Abigail and Daniel Laciste, bring this action on their own behalf, and as legal guardians of K.L., a minor child, to redress Defendant's numerous unfair and deceptive acts and practices designed to mislead the public in connection with their promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac Infant Formula, including but not limited to Similac®, Alimentum® and EleCare® products ("said Similac products") which Defendant unfairly and deceptively promoted during the relevant time period as containing ingredients safe for infant consumption and being safe for use, when, in fact, they cause bacterial infections and gastrointestinal illnesses such as *Cronobacter sakazakii*, *Salmonella*, diarrhea, gastrointestinal illnesses, and other serious health problems.

2.      Similac, owned and made by ABBOTT LABORATORIES INC., tells consumers that "[t]he Promise of Similac… [is] to help keep your baby fed, happy, and healthy"[1] and that Similac brand is "Nutrition you can trust."[2] But recent testing at one of Defendant's manufacturing facilities tells a different story—one of broken promises, mistrust and concealment.  After receiving consumer complaints of *Cronobacter sakazakii* and *Salmonella* infections, the FDA's investigation along with the U.S. Centers for Disease Control and Prevention, and state and local partners, confirmed that Abbott's Sturgis, Michigan facility had findings to date of "several positive *Cronobacter sakazakii* results from environmental samples taken by the FDA and adverse inspectional observations by the FDA investigators."[3]

3.      Moreover, Politico reported that the FDA first received a report of a foodborne illness suspected to be linked to infant formula in September—four months before issuing the recall of three major brands—after four babies were hospitalized and one died.[4]  The Minnesota Department of Health investigated a case of an infant who was sickened by *Cronobacter sakazakii* in September 2021, the state agency told Politico.[5]  State health officials in Minnesota knew that the infant had consumed powdered formula produced at an Abbott Nutrition facility in Sturgis, Mich., and shared this information with the FDA and CDC in September of 2021.[6]  Inspectors found *Cronobacter sakazakii* in several environmental samples taken at the plant, *as well as*

---

[1] *Similac Home,* Abbott, 2022, https://www.similac.com/home.html (last visited Feb. 20, 2022).
[2] *The Promise of Similac,* Abbott, 2022 https://www.similac.com/why-similac/promise-of-similac.html (last visited Feb. 20, 2022).
[3] *FDA News Release,* Feb. 17, 2022, https://www.fda.gov/news-events/press-announcements/fda-warns-consumers-not-use-certain-powdered-infant-formula-produced-abbott-nutritions-facility (last visited Feb. 20, 2022).
[4] FDA learned of suspected infant formula illness four months before recall, February 18, 2022, https://www.politico.com/news/2022/02/18/fda-infant-formula-illness-four-months-before-recall-00010226     (last visited Feb. 20, 2022)
[5] *Id.*
[6] *Id.*

*records suggesting the company had been finding the bacteria in the plant and had destroyed product because of the issue.*[7]

4.      Plaintiffs, Abigail and Daniel Laciste, frequent purchasers of Similac Infant Formula, specifically EleCare, for their infant daughter's daily consumption, had been unaware that Abbott's Sturgis, Michigan facility had findings of positive *Cronobacter sakazakii* and *Salmonella* results in several environmental samples taken at the plant and the likely contamination of Abbott's Similac Infant Formula.  Had Plaintiffs known of the contamination, they would never have purchased said Similac products and never would have fed the said formula to their infant daughter.

## PARTIES, JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332, Diversity of Citizenship.  Complete diversity of citizenship exists between the Plaintiffs and the Defendant.  Damages in this action exceed $75,000.

6.      Plaintiffs, Abigail and Daniel Laciste, reside in Orlando, Florida and are citizens of Orange County, Florida.  At all times relevant, Plaintiffs purchased Similac Infant Formula, including but not limited to EleCare.  At all times relevant, Plaintiffs were unaware that these products contained or could contain contaminants, including, but not limited to certain bacteria such as *Salmonella* and *Cronobacter sakazakii*.  Had they known that these products contained or could contain said contaminants, they would not have purchased them.  Plaintiffs, Abigail and Daniel Laciste, individually, and as legal guardians of K.L., a minor child, incurred losses and damages as a result of the activities alleged herein.

[7] *Id.*

7.      Defendant, Abbott Laboratories, Inc. ("Abbott" or "Defendant") is a Delaware corporation with a principal place of business in Abbott Park, Lake County, Illinois, and registered in Florida as a foreign profit corporation.  Abbott has been and still is engaged in the business of manufacturing, promoting and selling Similac Infant Formula, including but not limited to Similac®, Alimentum® and EleCare® products.  These products are sold throughout Florida and the United States.

8.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as Plaintiffs are citizens of the State of Florida and Defendant is a corporation organized and existing under the laws of Delaware with its principal place of business located in Abbott Park, Lake County, Illinois and the amount in controversy exceeds $75,000.  For the purposes of diversity jurisdiction, Abbott may be considered a "citizen" of Illinois and/or Delaware.

9.      The Court has personal jurisdiction over Defendant because it does business in the Middle District of Florida and has sufficient minimum contacts with this District.  Defendant intentionally avails itself of the markets in this State through the promotion, marketing, and sale of Similac Infant Formula, including but not limited to Similac®, Alimentum® and EleCare® products, to render the exercise of jurisdiction by this Court permissible under Florida law and the U.S. Constitution.

10.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 (b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## GENERAL FACTUAL ALLEGATIONS

11.    Plaintiffs repeat, reiterate, and reallege, each and every allegation contained in this complaint with the same force and effect as if fully set forth herein.

12.    Defendant manufactures, labels, markets, and sells infant formula under the Similac, Alimentum and EleCare brands.

13.    On February 17, 2022, the U.S. Food and Drug Administration ("FDA") announced it was investigating consumer complaints of *Salmonella* and *Cronobacter sakazakii* infections related to the ingestion of Similac, Alimentum and EleCare.

14.    Specifically, the FDA announced it was: "investigating consumer complaints of *Cronobacter sakazakii* and *Salmonella* Newport infections. All of the cases are reported to have consumed powdered infant formula produced from Abbott's Sturgis, Michigan facility. As a result of the ongoing investigation, along with the U.S. Centers for Disease Control and Prevention ("CDC") and state and local partners, the FDA is alerting consumers to avoid purchasing or using certain powdered infant formula products produced at this facility. This is an ongoing investigation, and the firm is working with the FDA to initiate a voluntary recall of the potentially affected product."[8]

15.    The FDA news release further advised consumers should "not use Similac, Alimentum, or EleCare powdered infant formulas if (a) the first two digits of the code are 22 through 37; and (b) the code on the container contains K8, SH or Z2; and (c) the expiration date is 4-1-2022 (APR 2022) or later."[9]

---

[8] *FDA News Release*, Feb. 17, 2022, https://www.fda.gov/news-events/press-announcements/fda-warns-consumers-not-use-certain-powdered-infant-formula-produced-abbott-nutritions-facility (last visited Apr. 18, 2022).
[9] *Id*.

16.    The FDA news release also advised it was "investigating complaints of four infant illnesses from three states. All four cases related to these complaints were hospitalized and *Cronobacter* may have contributed to a death in one case. The FDA has initiated an onsite inspection at the facility. Findings to date include several positive *Cronobacter sakazakii* results from environmental samples taken by the FDA and adverse inspectional observations by the FDA investigators. A review of the firm's internal records also indicate environmental contamination with *Cronobacter sakazakii* and the firm's destruction of product due to the presence of *Cronobacter*."[10]

17.    So far, the FDA has linked two infant deaths and multiple illnesses to the contamination of Abbot's Similac, Alimentum, and EleCare powdered infant formulas produced in its Sturgis, Michigan plant.[11]

18.    As part of the Warning, Frank Yiannas, FDA Deputy Commissioner for Food Policy and Response, stated:

> **"As this is a product used as the sole source of nutrition for many of our nation's newborns and infants, the FDA is deeply concerned about these reports of bacterial infections."[12]**

19.    On February 17, 2022, Defendant initiated a voluntary recall of infant formula under the Similac, Alimentum and EleCare brands due to "[c]onsumer complaints regarding *Cronobacter sakazakii* [and] *Salmonella*" infections.[13]   However, the recall did not include a

---

[10] *Id.*

[11] *FDA Investigation of Cronobacter Infections: Powdered Infant Formula*, FDA: RECALLS, OUTBREAKS & EMERGENCIES,  https://www.fda.gov/food/outbreaks-foodborne-illness/fda-investigation-cronobacter-infections-powdered-infant-formula-february-2022 (last updated Mar. 31, 2022).

[12] *See supra* note 8.

[13] *Abbott Voluntarily Recalls Powder Formulas Manufactured at One Plant*, FDA: Recalls, Market Withdraws, & Safety Alerts (Feb. 17, 2022), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/abbott-voluntarily-recalls-powder-formulas-manufactured-one-plant.

refund, reimbursement, or replacement for consumers who purchased or used the recalled products.

20.    On February 28, 2022, the recall was expanded to include one lot of Similac PM 60/40 (Lot #27032K80 (can) / Lot #27032K800 (case)), which was also manufactured in Abbott's Sturgis, Michigan facility.[14]

21.    According to the FDA, *Cronobacter* bacteria can cause severe, life-threatening infections (sepsis) or meningitis (an inflammation of the membranes that protect the brain and spine). Symptoms of sepsis and meningitis may include poor feeding, irritability, temperature changes, jaundice (yellow skin and whites of the eyes), grunting breaths and abnormal movements. *Cronobacter* infection may also cause bowel damage and may spread through the blood to other parts of the body.[15]  Further, according to the CDC, *Cronobacter* infections are often very serious for babies and can result in death.[16]

22.    According to the FDA, *Salmonella* are a group of bacteria that can cause gastrointestinal illness and fever called salmonellosis. Most people with salmonellosis develop diarrhea, fever and abdominal cramps. More severe cases of salmonellosis may include a high fever, aches, headaches, lethargy, a rash, blood in the urine or stool, and in some cases, may become fatal.[17]

23.    The FDA conducted three Form 483 inspections, which uncovered numerous violations of statutes and regulations as set forth herein in Defendant's manufacture, processing, packing, and holding of Similac, Alimentum, and EleCare powdered infant formulas—one in

---

[14] *See supra* note 11.
[15] *See supra* note 8.
[16] *CDC Cronobacter*, 2022, https://www.cdc.gov/cronobacter/index.html (last visited Apr. 18, 2022)
[17] *See supra* note 8.

September of 2019, the second in September of 2021, and the third from January through March of 2022.[18]

24.     The purpose of an FDA Form 483 inspection is to "notif[y] the company's management of objectionable conditions" and note any observed "conditions that in [the investigator's] judgment [which] may constitute violations of the Food Drug and Cosmetic (FD&C) Act and related Acts."[19]

25.     As documented in the FDA Form 483 issued on September 24, 2019, Defendant failed to "test a representative sample of a production aggregate of powdered infant formula at the final product stage and before distribution to ensure that the production aggregate meets the required microbiological quality standards."[20]

26.     Subsequent inspections established a pattern of Defendant's disregard of reasonable, responsible industry practices with respect to the manufacture, processing, packing, and holding of its powdered infant formulas.

27.     As documented in the FDA Form 483 issued on September 24, 2021, Abbott:

- Failed to "maintain a building used in the manufacture, processing, packing, or holding of infant formula in a clean and sanitary condition";[21] and

- Had "[p]ersonnel working directly with infant formula, its raw materials, packaging, or equipment or utensil contact surfaces did not wash hands thoroughly in a hand washing facility at a suitable temperature after the hands may have become soiled or contaminated."[22]

---

[18] *See supra* note 11.

[19] *FDA Form 483 Frequently Asked Questions*, FDA: Inspections, Compliance, Enforcement, and Criminal Investigations, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/inspection-references/fda-form-483-frequently-asked-questions (last updated Jan. 9, 2020).

[20] 2019 FDA Form 483 Observations, https://www.fda.gov/media/156748/download?utm_medium=email&utm_source=govdelivery (last visited Apr. 18, 2022).

[21] 2021 FDA Form 483 Observations, https://www.fda.gov/media/156747/download?utm_medium=email&utm_source=govdelivery (last visited Apr. 18, 2022).

[22] *Id.*

28.    On March 18, 2022, the FDA released the findings from its 2022 Form 483 inspection conducted at Abbott's facility, which noted that Abbott:

- Failed to "establish a system of process controls covering all stages of processing that was designed to ensure that infant formula does not become adulterated due to the presence of microorganisms in the formula or in the processing environment";[23]

- Failed to "ensure that all surfaces that contacted infant formula were maintained to protect infant formula from being contaminated by any source";[24]

- Failed to document any "determination as to whether a hazard to health exists" due to contamination with microorganisms;[25] and

- Had "[p]ersonnel working directly with infant formula, its raw materials, packaging, equipment, or utensil contact surfaces [who] did not wear necessary protective apparel."[26]

29.    Additionally, Abbott's own records indicate that, in June of 2020, Abbott destroyed products due to a previous *Cronobacter* contamination,[27] establishing that Abbott, at various times:

- Had knowledge that *Cronobacter* contaminated its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant;

- Failed to adequately test for *Cronobacter* in its powdered infant formula; and

- Failed to ensure sufficient controls were in place to prevent contamination of its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant.

30.    The results of these investigations demonstrate a pattern of Defendant not only failing to take adequate, reasonable measures to protect the health and lives of infants consuming its powered infant formula products, but also failing to take even the common-sense measures,

---

[23] 2022 FDA Form 483 Observations, https://www.fda.gov/media/157073/download?utm_medium=email&utm_source=govdelivery (last visited Apr. 18, 2022).
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *See supra* note 8.

such as washing hands, upon learning of the risk of contamination of its products with microorganisms.

31.    On or about February 1, 2021, Plaintiffs, Abigail and Daniel Laciste, began purchasing EleCare for their infant daughter, K.L.

32.    Upon and information and belief, at least one of the infant formula containers purchased by Plaintiffs had lot numbers matching the tainted lots identified by the FDA news advisory.

33.    Plaintiffs' infant child, K.L., consumed the tainted infant formula.

34.    As a result of Infant K.L.'s consumption of the tainted EleCare formula manufactured by Defendant, K.L. began experiencing the following symptoms: fever, rash, congestion, and chronic vomiting.  These symptoms persisted from approximately February of 2021 until February of 2022.

35.    In February of 2022, Plaintiffs learned of the Recall and stopped feeding their infant daughter, K.L., EleCare formula.

36.    In addition to the symptoms listed above, and as a result of Infant K.L.'s consumption of the tainted EleCare formula manufactured by Defendant, K.L. completely stopped eating.

37.    In order to feed her, Infant K.L. had a nasogastric tube placed in February of 2021. In April of 2021, K.L. had a PEG feeding tube surgically placed.  In May of 2021, K.L. transitioned from the PEG feeding tube to the Mic-Key button gastronomy tube.

38.    Plaintiffs' infant child, K.L., suffered illness and injury as a direct result of consuming the tainted EleCare.

39.    As a direct and proximate result of Plaintiffs' infant child, K.L., ingesting the contaminated formula, Plaintiffs have suffered injuries in the past that will continue in the future.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Negligence**

40.    Plaintiffs incorporate by reference paragraphs 1–39 above as if fully set forth herein and further declare:

41.    Defendant formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold Similac products to consumers.

42.    The use of said Similac products containing contaminants, including, but not limited to *Cronobacter sakazakii* and *Salmonella*, among other contaminants, causes serious infections and illnesses including, but not limited to *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

43.    Defendant has a duty to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Similac products, including a duty to ensure that said Similac products are safe for use and a duty to warn that Similac products may cause *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

44.    As set forth in detail above, Defendant failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of said Similac products by failing to ensure that said Similac products were safe for use.

45.    Specifically, Defendant was negligent in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of said Similac products in that they, among other things:

(a)    Failed to use reasonable care in formulating, designing and manufacturing Similac products so as to ensure that they were safe for use and did not cause adverse health effects including, but not limited to *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses;

(b)    Failed to conduct adequate safety testing of Similac products and the ingredients used to make Similac products; and

(c)    Failed to accompany Similac products with proper warnings regarding the possible adverse health effects associated with its use including, but not limited to, *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

46.    That Defendant breached the abovementioned duties to Plaintiffs.

47.    That Defendant's breach of the abovementioned duties was the actual and proximate cause of Plaintiffs' injuries.

48.    Despite the fact the Defendant knew or should have known that its Similac products could cause serious adverse health effects, it continued to market and sell them to consumers, including Plaintiffs, despite the reasonable possibility that said Similac products caused *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

49.    Defendant knew or should have known that consumers, including Plaintiff, would foreseeably be put at risk of *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses to infant children as a result of Defendant's failure to give warning of the adverse health effects associated with use of said Similac products.

50.     Defendant's negligence proximately caused Plaintiffs to be injured, including, but not limited to the following health related injuries, significant exposure to toxic substances, *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses and other related injuries, as well as the associated costs of diagnostic screening and medical monitoring, and economic harm in that Plaintiffs would not have purchased said contaminated EleCare products if they had known the true facts.

51.     As a direct and proximate result of Defendant's negligence, Plaintiffs, Abigail and Daniel Laciste, Individually, and as legal guardians of K.L., a minor child, suffered significant exposure to toxic substances, which may cause or contribute to causing disease, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, experienced in the past and to be experienced in the future, expense of hospitalization and medical care experienced in the past and to be experienced in the future, medical and nursing care and treatment experienced in the past and to be experienced in the future, loss of earnings, loss of ability to earn money in the future, which losses are permanent and continuing in nature and Plaintiffs will suffer the injuries and impairment in the future, and economic harm in that Plaintiffs would not have purchased said contaminated EleCare products if they had known the true facts.

## SECOND CAUSE OF ACTION
### Strict Product Liability

52.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein, and further declare:

53.     Defendant formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold Similac Infant Formula, including but not limited to

13

Similac, Alimentum and EleCare products, or have partnered to formulate, design, manufacture, promote, market, advertise, package, label, distribute and/or sell said Similac Infant Formula, including but not limited to Similac, Alimentum and EleCare products.

54.    At all times relevant, Defendant knew or should have known that said Similac products contained a non-obvious danger in their ingredients, as well as of the dangers of contaminated infant formula as described in this Complaint.

55.    The Similac products that Defendant formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold were defective in their formulation, design and/or manufacturing.  Further, the Similac products were defective when they left control of the Defendant such that: (1) the foreseeable risks of *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses posed by said contaminated Similac products exceeded the benefits associated with the formulation, design and manufacturing of Similac products, or (2) said Similac products were unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other similar products.

56.    Defendant knew that Plaintiffs would use said Similac products without expecting to be put at risk of *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses to infant children. However, Defendant failed to warn Plaintiffs as to the potential adverse health effects that using said contaminated Similac products could have.

57.    Said Similac products were expected to and did reach Plaintiffs without substantial change in condition.

58.     The said Similac products Defendant formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold were defective due to inadequate formulation, design, manufacture, safety testing and inadequate warning of the Similac products' true nature.

59.     Had Plaintiffs been warned about the contaminated Similac products and the risk of *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses to infant children, as a result of the use of said Similac products and/or the danger that they posed, they would not have purchased, acquired or used said Similac products.

60.     Plaintiffs were harmed directly and proximately by Defendant's failure to warn and defectively designed said Similac infant formula products. Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease; *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses and other related injuries, as well as the associated costs of diagnostic screening and medical monitoring, and economic harm in that Plaintiffs would not have purchased said contaminated EleCare products if they had known the true facts.

61.     Further, Plaintiffs, Abigail and Daniel Laciste, Individually, and as legal guardians of K.L., a minor child, were harmed directly and proximately by Defendant's defectively designed EleCare products and their failure to warn.  Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, experienced in the past and to be experienced in the future, expense of hospitalization and medical care experienced in the past and to be experienced in the future, medical and nursing care and

treatment experienced in the past and to be experienced in the future, loss of earnings, loss of ability to earn money in the future, which losses are permanent and continuing in nature and Plaintiffs will suffer the injuries and impairment in the future, and economic harm in that Plaintiffs would not have purchased said contaminated EleCare products if they had known the true facts.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**

62.    Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein, and further declare:

63.    Defendant provided Plaintiffs with written express warranties by promotion and other means that said Similac products were safe for use and promised to give babies a strong start by helping to keep them fed, happy and healthy.

64.    Defendant breached these warranties in violations of applicable law, by manufacturing, promoting, marketing, advertising, distributing and/or selling said contaminated Similac products which resulted in damages to Plaintiffs.

65.    Plaintiffs purchased said Similac products unaware that they contained contaminants.

66.    But for Defendant's breach of warranty, Plaintiffs would not have purchased said Similac products.

67.    Plaintiffs further assert claims under all other applicable state laws governing express warranties.

68.    As a proximate result of this breach of warranty by Defendants, Plaintiffs have suffered economic and non-economic damages in an amount to be determined at trial.

69.    Plaintiffs were harmed directly and proximately by Defendant's breach of express warranty.  Such harm includes significant exposure to toxic substances, which may cause or

contribute to causing disease; *Cronobacter sakazakii*, *Salmonella*, other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses and other related injuries, as well as the associated costs of diagnostic screening and medical monitoring, and economic harm in that Plaintiffs would not have purchased said contaminated EleCare products if they had known the true facts.

70.     Further, Plaintiffs, Abigail and Daniel Laciste, Individually, and as legal guardians of K.L., a minor child, were harmed directly and proximately by Defendant's breach of express warranty of said EleCare products.  Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, experienced in the past and to be experienced in the future, expense of hospitalization and medical care experienced in the past and to be experienced in the future, medical and nursing care and treatment experienced in the past and to be experienced in the future, loss of earnings, loss of ability to earn money in the future, which losses are permanent and continuing in nature and Plaintiffs will suffer the injuries and impairment in the future, and economic harm in that Plaintiffs would not have purchased said contaminated EleCare products if they had known the true facts.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**

71.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein, and further declare:

72.     As alleged above, Defendant warranted that said Similac products were safe for use and promised to give babies a strong start by helping to keep them fed, happy and healthy.

73.     Thus, Defendant warranted that said Similac products were reasonably fit for the intended use for infant consumption.

74.     Because said Similac products described above contained contaminants, they are not reasonably fit for the uses intended or reasonably foreseeable.

75.     Plaintiffs purchased said Similac products unaware that they contained contaminants.

76.     But for Defendant's breach of warranty, Plaintiffs would not have purchased said Similac products.

77.     As a direct and proximate result of Defendant's breach of warranty, Plaintiffs suffered injury in fact and actual damages.

78.     As a proximate result of this breach of warranty by Defendants, Plaintiffs have suffered economic and non-economic damages in an amount to be determined at trial.

79.     Plaintiffs were harmed directly and proximately by Defendant's breach of warranty.  Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease; *Cronobacter sakazakii*, *Salmonella,* other bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses and other related injuries, as well as the associated costs of diagnostic screening and medical monitoring, and economic harm in that Plaintiffs would not have purchased said contaminated EleCare products if they had known the true facts.

80.     Further, Plaintiffs, Abigail and Daniel Laciste, Individually, and as legal guardians of K.L., a minor child, were harmed directly and proximately by Defendant's breach of warranty of said EleCare products.  Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, experienced in the past and to be experienced in the future, expense of hospitalization and medical care experienced in the

past and to be experienced in the future, medical and nursing care and treatment experienced in

the past and to be experienced in the future, loss of earnings, loss of ability to earn money in the

future, which losses are permanent and continuing in nature and Plaintiffs will suffer the injuries

and impairment in the future, and economic harm in that Plaintiffs would not have purchased said

contaminated EleCare products if they had known the true facts.

### FIFTH CAUSE OF ACTION
### Breach of Implied Warranty under the Magnuson-Moss Warranty Act,
### 15 U.S.C. § 2301 *et seq*.

81.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein,

and further declare:

82.     Plaintiffs bring this cause of action against Defendant.

83.     The Similac Infant Formula, including but not limited to Similac, Alimentum and

EleCare products are a "consumer product" within the meaning of the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(1).

84.     Plaintiffs are "consumers" within the meaning of the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(3).

85.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(4)-(5). Defendant impliedly warranted that Similac Infant

Formula, including the Similac, Alimentum and EleCare products, were of merchantable quality

and fit for such use. This implied warranty included, among other things: (i) a warranty that said

Similac products were manufactured, supplied, distributed, and/or sold by Defendant were safe

and reliable for infant consumption; and (ii) a warranty that said Similac products would be fit for

its intended use.

86.    Contrary to the applicable implied warranties, the said Similac products at the time of sale and thereafter were not fit for their ordinary and intended purpose of infant consumption. Instead, said Similac products are defective, contain contaminants and not safe for infant consumption.

87.    Defendant's breach of implied warranty has deprived Plaintiffs of the benefit of their bargain.

88.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

89.    The alleged Similac infant formula product defects were inherent in each Similac product and were present in each Similac product at the time of sale.

90.    As a direct and proximate cause of Defendant's breach of implied warranty, Plaintiffs sustained both economic and non-economic damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiffs, who are entitled to recover actual damages, punitive damages, consequential damages, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

91.    As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs have incurred damages.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment

92.    Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

93.    As a result of Defendant's unlawful conduct described above, Defendant was enriched at the expense of Plaintiffs.

94.     Defendant has benefited from its unlawful acts by receiving excessive revenue derived from the sales of said Similac products represented as being safe for use. Defendant appreciated and/or knew the benefit of the receipt of such excessive revenue. This excessive revenue has been received by Defendant at the expense of Plaintiffs, under circumstances in which it would be inequitable for Defendant to be permitted to retain the benefit.

95.     Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiffs for monies paid to Defendant for the sale of said contaminated EleCare products.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, Abigail and Daniel Laciste, individually and as legal guardians of K.L., a minor child, seek the following relief against Defendant:

A.     An order awarding Plaintiffs damages, and punitive damages in the amount to be determined at trial;

C.     An order awarding restitution and disgorgement of Defendant's revenues from the products to Plaintiffs;

D.     An order awarding attorneys' fees and costs to Plaintiffs;

E.     An order awarding declaratory relief and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

F.     An order providing for all other such relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

Dated: April 19, 2022

Respectfully submitted

*s/ Scott P. Schlesinger*___
Scott P. Schlesinger
Jonathan R. Gdanski
Steven J. Hammer
David Silverman
Jeffrey L. Haberman
Cristina Sabbagh
Sarah J. Schultz

**SCHLESINGER LAW OFFICES, P.A.**
1212 SE 3rd Avenue
Fort Lauderdale, FL 33316
Telephone: (954) 467-8800
SLOPA.Service@schlesingerlaw.com
scott@schlesingerlaw.com
jonathan@schlesingerlawoffices.com
sjh@schlesingerlaw.com
dsilverman@schlesingerlaw.com
jhaberman@schlesingerlaw.com
csabbagh@schlesingerlaw.com
sarah@schlesingerlaw.com

*Attorneys for Plaintiffs*